**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTRE FOR NEURO SKILLS, | 1:13-CV-00743-LJO-JLT |
| Plaintiff, | **ORDER ON MOTIONS TO DISMISS**<br>(Docs. 21, 25) |
| v. | |
| BLUE CROSS OF CALIFORNIA DBA<br>ANTHEM BLUE CROSS, et al, | |
| Defendants. | |

**PRELIMINARY STATEMENT TO PARTIES AND COUNSEL**

Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. This Court cannot address all arguments, evidence and matters raised by parties and addresses only the arguments, evidence and matters necessary to reach the decision in this order given the shortage of district judges and staff. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to consider consent to a Magistrate Judge to conduct all further proceedings in that the Magistrate Judges' availability is far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill who must prioritize criminal and older civil cases.

**INTRODUCTION**

Plaintiff Centre for Neuro Skills ("CNS") brings this action for violations of the Employee Retirement Income Security Act of 1976 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), federal common law, California tort and contract law, and California's Unfair Competition Law ("UCL"), Cal. Bus. Prof. Code § 17200, *et seq*, against Defendants Blue Cross of California d/b/a Anthem Blue Cross, Anthem Blue Cross Life and Health Insurance Company (collectively, "Blue Cross"), Healthcomp, Santa Rosa

Rancheria Tachi Palace Hotel & Casino ("Plan Administrator"), and Santa Rosa Rancheria Tachi Palace Hotel & Casino Tribal Member Health Care Plan ("Plan") (collectively, "Santa Rosa").  Blue Cross and Santa Rosa filed the instant motions to dismiss under Fed. R. Civ. P. 12(b)(6) and 12(b)(1) respectively.  For the reasons discussed below, the Court GRANTS in part and DENIES in part Blue Cross' and Santa Rosa's motions to dismiss.

## BACKGROUND

**A.  Facts** [1]

CNS provides rehabilitative healthcare services for patients who have suffered traumatic physical brain injury.  Patient John Doe is a member of the Plan.  HealthComp serves as the third-party administrator of the Plan and retained Blue Cross for the purposes of authorizing, managing, and pricing healthcare services rendered to members of the Plan, including John Doe.

CNS provided rehabilitative services to John Doe in 2010.  Prior to John Doe's admission, as CNS had done in the past, CNS negotiated per-diem rates with Blue Cross that Blue Cross agreed to pay for each day of John Doe's treatment.  CNS did not have a written contract with Blue Cross at the time of John Doe's admission.

On April 19, 2010, the Blue Cross Case Manager assigned to John Doe began sending authorizations to CNS to provide care for John Doe based on the rate agreement between CNS and Blue Cross.  Blue Cross also sent a Letter of Agreement ("LOA") formally reflecting this arrangement and the rates that Blue Cross agreed to pay for John Doe's care.  The LOA explained that John Doe was being offered "an alternative to eligible regular contract benefits for the health care services," and that these benefits were to apply from April 20, 2010 through July 20, 2010, covering the entire length of John Doe's stay at CNS.

Separately, CNS also obtained an assignment of insurance from John Doe under which CNS "stands in the shoes of" John Doe for purposes of recovering plan benefits to which he was entitled.

In reliance on the LOA and other communications with Blue Cross, CNS admitted John Doe on April 20, 2010, and continued to render treatment up to June 22, 2010.  CNS' charges for the services

---

[1] The background facts are derived from the complaint.  The Court accepts the factual allegations as true for purposes of these motions.  *Lazy Y. Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

1   rendered during this period totaled $146,341.  CNS began billing Blue Cross for the John Doe's care

2   shortly after his admission.

3           CNS received an Explanation of Benefits ("EOB") and check dated June 16, 2010 for one bill

4   for a physician's office visit CNS provided for John Doe on May 7, 2010.  The EOB indicated that the

5   office visit was covered and did not mention any denial or limitation of care regarding John Doe's

6   coverage.  Blue Cross also issued an EOB dated October 28, 2011 instructing payment of $8,652 of the

7   $13,902 billed by CNS for one portion of John Doe's treatment.

8           After CNS discharged John Doe, CNS received generic EOBs from HealthComp stating that

9   payment for John Doe's care was denied because the services rendered were "not covered under the

10  Plan" for each day of John Doe's stay at CNS.

11          CNS contacted Blue Cross regarding the unpaid bills.  Blue Cross did not provide a definitive

12  explanation and suggested that the payment had been delayed due to mundane bill processing issues.

13  CNS also contacted HealthComp.  HealthComp ultimately indicated to CNS that John Doe's treatment

14  was not covered due to a purported alcohol-related exception in his plan.   HealthComp further

15  indicated to CNS that Blue Cross provides no coverage for John Doe and is not the ultimate payor for

16  John Doe's care.

17          CNS retained counsel and appealed these denials to Blue Cross, HealthComp, and the Plan

18  Administrator.  HealthComp and the Plan rejected CNS' appeals and maintained that Blue Cross was

19  never an agent of HealthComp or the Plan.

20  **B.    Procedural History**

21           CNS brought this action in this Court on May 17, 2013 for violations of ERISA, federal

22  common law, California tort and contract law, and California's UCL against various defendants.

23  Relevant to these motions, CNS brought claims for ERISA violations, federal common law estoppel,

24  negligent misrepresentation, breach of implied contract, and violation of the UCL against Blue Cross

25  and for ERISA violations and federal common law estoppel against Santa Rosa.  Blue Cross filed the

26  instant motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) on August 9, 2013.

27  Santa Rosa filed the instant motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ.

28  P. 12(b)(1) on August 9, 2013.  CNS filed oppositions on September 12, 2013.  Blue Cross and Santa

1   Rose filed replied on September 19, 2013.

2   **DISCUSSION**

3   **Motions to Dismiss**

4   **A.    12(b)(6) Failure to State a Claim**

5        Blue Cross moves this Court to dismiss CNS' complaint for failure to state a claim for which

6   relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

7       **1.    Legal Standard**

8        A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is a challenge to the sufficiency of

9   the allegations set forth in the complaint.  A dismissal under Rule 12(b)(6) is proper where there is

10  either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

11  cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  In

12  considering a motion to dismiss for failure to state a claim, the court generally accepts as true the

13  allegations in the complaint, construes the pleading in the light most favorable to the party opposing

14  the motion, and resolves all doubts in the pleader's favor.  *Lazy Y. Ranch LTD.,* 546 F.3d at 588.

15       To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the plaintiff must allege "enough

16  facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

17  570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

18  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

19  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability

20  requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

21  (citing *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are merely consistent with a

22  defendant's liability, it stops short of the line between possibility and plausibility for entitlement to

23  relief" *Id.* (citing *Twombly*, 550 U.S. at 557).

24       "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

25  factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires

26  more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

27  not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).  Thus, "bare assertions ... amount[ing]

28  to nothing more than a formulaic recitation of the elements ... are not entitled to be assumed true."

*Iqbal*, 129 S.Ct. at 1951.  A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (citation omitted).

Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D.Cal. 1998).  In practice, "a complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co*., 745 F.2d 1101, 1106 (7th Cir. 1984)).

To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend.  *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc*., 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

> **2.    Analysis**

> **i.    ERISA**

In its first cause of action, CNS alleges that Blue Cross failed to reimburse CNS, as assignee of John Doe's ERISA benefits, for services rendered to John Doe in violation of 29 U.S.C. § 1132(a)(1)(B).  Blue Cross argues CNS' claim fails because Blue Cross is not a proper ERISA defendant.

In the Ninth Circuit, civil liability under 29 U.S.C. § 1132(a)(1)(B) is not limited to a benefits plan and the plan administrator.  *Cyr v. Reliance Standard Life Ins. Co*., 642 F.3d 1202, 1207 (9th Cir. 2011).  In *Cyr*, the plaintiff sued the insurer of the benefits program.  The Ninth Circuit held that, because the insurer denied the plaintiff's request for increased benefits, the insurer "is, therefore, a logical defendant for an action by [the plaintiff] to recover benefits due to her under the terms of the plan and to enforce her rights under the terms of the plan, which is precisely the civil action authorized by § 1132(a)(1)(B)." *Id*.

The Ninth Circuit further concluded that such liability is not limited to the plan or the plan administrator because "the plan administrator can be an entity that has no authority to resolve benefit claims or any responsibility to pay them." *Id*.  There, the court observed that, "CTI was identified as

1   the plan administrator, but it had nothing to do with denying [the plaintiff]'s claim for increased

2   benefits." *Id.*

3         Likewise, here, Santa Rosa Rancheria Tachi Palace Hotel & Casino was identified as the

4   Plan Administrator, but there are no allegations as to its role in denying coverage for CNS' treatment

5   of John Doe.  Rather, under the facts alleged, HealthComp and Blue Cross held and exercised decision

6   making authority.  For example, Blue Cross negotiated and agreed to the rate CNS would charge for its

7   treatment of John Doe.  Blue Cross provided the LOA to CNS formalizing the terms of their agreement

8   for John Doe's treatment and specifying that Blue Cross was entering into a contract with CNS for

9   "alternative benefits" for John Doe that would cover his entire stay at CNS.  Further, Blue Cross

10  provided an EOB and partial payment for John Doe's treatment to CNS.  Blue Cross "is, therefore, a

11  logical defendant for an action by [CNS] to recover benefits due to [it]" as assignee of John Doe.  *Cyr*,

12  642 F.3d at 1207.

13        Because the alleged facts show that Blue Cross held and exercised authority to authorize,

14  arrange for, and pay for John Doe's treatment by CNS, Blue Cross fails to show that it is not a proper

15  ERISA defendant in this matter.  Blue Cross' motion to dismiss CNS' first cause of action is DENIED.

16                  **ii.        Estoppel**

17        In its second cause of action, CNS alleges that CNS detrimentally relied on Blue Cross'

18  statements and representations in rendering treatment for John Doe.[2]  Blue Cross argues that CNS fails

19  to state sufficiently the required elements for federal common law equitable estoppel for an ERISA

20  action.

21        Unlike some other circuits, the Ninth Circuit "has recognized that federal equitable estoppel

22  principles can, in certain circumstances, apply to some claims arising under ERISA."  *Greany v. W.*

23  *Farm Bureau Life Ins. Co.*, 973 F.2d 812, 821 (9th Cir. 1992) (citing *Davidian v. Southern Cal. Meat*

24  *Cutters Union and Food Employees Benefit Fund*, 859 F.2d 134, 136 (9th Cir. 1988)).  "A beneficiary

---

25

26  [2] To be clear, CNS is not arguing that Blue Cross waived any preclusive provision in the Plan by misrepresenting to CNS that Blue Cross would pay for John Doe's treatment and including CNS's reliance thereon.  "Although some courts have conflated the two, waiver is a distinct claim from equitable estoppel."  *Purney v. Reliastar Life Ins. Co.*, 681 F. Supp. 2d

27  1262, 1269 (D. Nev. 2010) (analyzing waiver and equitable estoppel in the context of ERISA).  While equitable estoppel is available in the context of ERISA under certain circumstances, "[t]he United States Court of Appeals for the Ninth Circuit

28  has yet to consider whether waiver applies in the ERISA context."  *Id.*

6

may recover benefits under ERISA based on an equitable estoppel theory, if he shows: (1) a material misrepresentation; (2) reasonable and detrimental reliance on the representation; (3) extraordinary circumstances; (4) the provisions of the plan at issue are ambiguous, such that reasonable persons could disagree as to their meaning or effect; and (5) the representations must have been made to the beneficiary involving an oral interpretation of the plan." *Renfro v. Funky Door Long Term Disability Plan*, 686 F.3d 1044, 1054 (9th Cir. 2012) (citing *Pisciotta v. Teledyne Indus., Inc*., 91 F.3d 1326, 1331 (9th Cir. 1996)). "Moreover, a beneficiary cannot obtain recovery on the basis of estoppel 'in the face of contrary, written plan provisions.'" *Id*. (quoting *Davidian*, 859 F.2d at 134).

Here, the Plan documents clearly state that, "a charge for the following is not covered: […] [a]ccidents while intoxicated[.]" (Doc. 23, Exh. A, p. 64). This does not indicate ambiguity in the Plan provisions such that reasonable persons could disagree as to their meaning or effect. *Pisciotta*, 91 F.3d at 1331. Moreover, even assuming CNS sufficiently alleges all of the *Pisciotta* factors, CNS nonetheless may not recover on the basis of estoppel because recovery of treatment expenses for John Doe for injuries sustained in an accident while he was intoxicated is contrary to written plan provisions. *Renfro*, 686 F.3d at 1054.

Therefore, Blue Cross' motion to dismiss CNS' second cause of action for federal common law equitable estoppel is GRANTED.

### iii.    State Law Claims

CNS alleges that Blue Cross engaged in negligent misrepresentation, unfair competition, and beached their implied contract under California law. Blue Cross argues that each state law claim is preempted by ERISA's conflict preemption provision, 29 U.S.C. § 1144(a). Blue Cross further contends that CNS's negligent misrepresentation and breach of contract claims are time-barred, and that each state law claim is insufficiently pleaded.

### 1.    Preemption

ERISA's preemption provision, 29 U.S.C. § 1144(a), provides that ERISA's provisions shall generally "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." "While this section suggests that the phrase 'relate to' should be read broadly, the

Supreme Court has recently admonished that the term is to be read practically, with an eye toward the action's actual relationship to the subject plan." *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172 (9th Cir. 2004) (citing *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655–56 (1995)).

"Generally speaking, a common law claim 'relates to' an employee benefit plan governed by ERISA if it has a connection with or reference to such a plan." *Id.* (citing *Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Group, Inc.*, 187 F.3d 1045, 1052 (9th Cir. 1999)) (internal quotation omitted).

"In evaluating whether a common law claim has 'reference to' a plan governed by ERISA, the focus is whether the claim is premised on the existence of an ERISA plan, and whether the existence of the plan is essential to the claim's survival.  If so, a sufficient 'reference' exists to support preemption." *Id.* (citing *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 324–25 (1997); *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990)).

The Ninth Circuit has also held that "ERISA does not preempt 'claims by a third-party who sues an ERISA plan not as an assignee of a purported ERISA beneficiary, but as an independent entity claiming damages,' because such claims do not 'relate' to ERISA preemption." *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 978 (9th Cir. 2007) (quoting *The Meadows v. Employers Health Insurance*, 47 F.3d 1006, 1008 (9th Cir. 1995)).

Here, CNS brings its federal claims, the first two causes of action, as John Doe's assignee, and seeks to recover benefits.  However, CNS brings its state law claims as an independent third-party healthcare provider seeking damages and restitution.  None of CNS' state law claims requires construction of the terms of the Plan. Moreover, CNS' state law claims are not premised on the existence of the Plan.  CNS alleges that Blue Cross negligently misrepresented that it had the responsibility to pay for John Doe's treatment at CNS[3], that Blue Cross breached an implied agreement

---

[3] In its negligent misrepresentation claim, CNS also alleges that Blue Cross failed to disclose the existence of the Plan, the alcohol exception in the Plan, and that John Doe of a member of a self-funded Plan.  To the extent these allegations rely on the existence of the Plan, they are preempted.  However, CNS' principal allegation in its negligent misrepresentation cause of action is that Blue Cross held itself out as having the authority and responsibility to render payment for John Doe's treatment at CNS.  Because this allegation is not premised on the existence of the Plan, CNS's claim for negligent misrepresentation survives preemption.

1  with CNS to pay the agreed upon rate for John Doe's treatment at CNS, and that Blue Cross' conduct

2  in authorizing and inducing providers to render healthcare services without disclosing material

3  information amounts to unfair competition.  None of these relies on the existence of the Plan.  *Cedars-*

4  *Sinai Med. Ctr.*, 497 F.3d at 978, *The Meadows*, 47 F.3d at 1008.

5         Therefore, CNS' state law claims are not necessarily preempted by ERISA § 1144(a).

6                          **2.       Statute of Limitations**

7         Blue Cross argues that CNS' claims for negligent misrepresentation and breach of implied

8  contract are time-barred.

9         Under California law, the statute of limitations for negligent misrepresentation, as opposed to

10  intentional misrepresentation, is two years.  *Ventura Cnty. Nat. Bank v. Macker*, 49 Cal. App. 4th

11  1528, 1531 (1996) ("Negligent misrepresentation is born of the union of negligence and fraud.  If

12  negligence is the mother and misrepresentation the father, it more closely resembles its mother.").  The

13  limitations period for an implied contract claim is also two years.  Cal. Code Civ.Proc., § 339(1); 3

14  Witkin, California Procedure (3d ed. 1985) Actions, § 99, pp. 124–125.

15         John Doe was discharged on June 22, 2010, and CNS filed its complaint on May 17, 2013.

16  CNS alleges that it became clear that Blue Cross and other Defendants would not pay for John Doe's

17  treatment "after Mr. Doe was discharged."  (Doc. 1, ¶ 20).  After John Doe was discharged, CNS

18  received EOBs from HealthComp and engaged in a series of communication with Blue Cross and other

19  Defendants regarding payment for John Doe's treatment.  Blue Cross issued an EOB to CNS in partial

20  payment of John Doe's treatment as late as October 28, 2011.  The pleadings do not make clear how

21  long after John Doe's discharge CNS' claims for negligent misrepresentation and breach of implied

22  contract accrued.  The Ninth Circuit has admonished that "a complaint cannot be dismissed unless it

23  appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of

24  the claim."  *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995) (citing *Jablon*

25  *v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)).  Therefore, accepting as true all of the

26  allegations in the complaint and resolving all doubts in favor of CNS, CNS' negligent

27  misrepresentation and breach of implied contract claims need not be untimely.

28
                                            9

### 3.    Sufficiency of Pleadings

#### a.    Negligent Misrepresentation[4]

CNS alleges that, during its course of dealing with Blue Cross, Blue Cross engaged in negligent misrepresentation by holding itself out as the financially responsible payor for John Doe's treatment at CNS to induce CNS to provide healthcare services for John Doe.

"The elements of negligent misrepresentation, a form of deceit, are misrepresentation of a past or existing material fact, without reasonable ground for believing it to be true, and with intent to induce another's reliance on the fact misrepresented; ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed; and resulting damage." *Home Budget Loans, Inc. v. Jacoby & Meyers Law Offices*, 207 Cal. App. 3d 1277, 1285 (Cal. Ct. App. 1989) (citing *Fox v. Pollack*, 181 Cal.App.3d 954, 962 (1986)).

Blue Cross negotiated and formalized an agreement with CNS for payment for John Doe's treatment and accepted bills from CNS for John Doe's treatment.  Blue Cross also rendered partial payment to CNS for John Doe's treatment.   Therefore, Blue Cross through its conduct and communications with CNS held itself out as having authority and responsibility to arrange and pay for John Doe's treatment.  Blue Cross has no reasonable ground for believing this to be true.   The complaint alleges that Blue Cross induced CNS to provide healthcare services to John Doe by holding itself out as having the authority and responsibility to arrange and pay for John Doe's treatment.  CNS had no knowledge that a third party was purportedly the actual financially responsible party or that

---

[4] Blue Cross argues that Fed. R. Civ. P 9(b)'s heightened pleading standard for fraud claims should apply equally to negligent misrepresentation claims.  There is no binding authority in the Ninth Circuit on this issue.  *Petersen v. Allstate Indem. Co* ., 281 F.R.D. 413, 416 (C.D. Cal. 2012) ("[T]he Ninth Circuit has not yet decided the issue of whether negligent misrepresentation claims are subjected to Rule 9(b)") (citing *Anschutz Corp. v. Merrill Lynch & Co*., 785 F.Supp.2d 799, 823 (N.D. Cal. 2011)).  Blue Cross' authorities rely on non-binding decisions of other district courts or secondary sources.  *See, e.g*., *Neilson v. Union Bank of California, N.A*., 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003) (citing *Glen Holly Entertainment, Inc. v. Tektronix, Inc*., 100 F.Supp.2d 1086, 1093 (C.D.Cal.1999).  Moreover, these cases were considering claims for negligent misrepresentation in conjunction with fraud claims.  "As such, those cases stand for the premise that a court can dismiss a negligence claim *grounded in fraud* if it fails to satisfy Rule 9(b)'s heightened pleading requirements." *U.S. Capital Partners, LLC v. AHMSA Int'l, Inc*., 2013 WL 594285 at * 3 (N.D. Cal. Feb. 14, 2013) (emphasis in the original).  Because CNS does not allege fraud in conjunction with negligent misrepresentation, this Court declines to apply Rule 9(b)'s heightened pleading requirements here.

1  Blue Cross lacked the authority or responsibility to render payment for John Doe's treatment.   CNS

2  relied on Blue Cross' misrepresentation in deciding to admit John Doe and providing healthcare

3  services to him.   As a result, CNS suffered damages in the form of unpaid healthcare bills of over

4  $100,000 for John Doe's treatment.

5      CNS has adequately pleaded each element of a claim for negligent misrepresentation against

6  Blue Cross.   Therefore, Blue Cross' motion to dismiss CNS' third cause of action is DENIED.

7                              **b.      Breach of Implied Contract**

8      In its fourth cause of action, CNS alleges that the course of conduct between CNS and Blue

9  Cross created an implied contract under which CNS would provide healthcare services for John Doe

10  and Blue Cross would pay for those services.   CNS claims that Blue Cross breached this implied

11  contract by delaying and denying payment to CNS.

12      The elements of a cause of action for breach of contract are (1) the existence of the contract,

13  (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting

14  damages to the plaintiff.   *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) (citing

15  (*Reichert v. General Ins. Co*., 68 Cal.2d 822, 830 (1968)).   "A cause of action for breach of implied

16  contract has the same elements as does a cause of action for breach of contract, except that the promise

17  is not expressed in words but is implied from the promisor's conduct."   *Yari v. Producers Guild of Am.*,

18  Inc., 161 Cal. App. 4th 172, 182 (2008) (citing *Chandler v. Roach*, 156 Cal.App.2d 435, 440 (1957)).

19      The complaint alleges that, prior to admitting John Doe, CNS negotiated with Blue Cross

20  per-diem rates that would be paid for John Doe's treatment at CNS.   Blue Cross and CNS agreed to a

21  rate, and Blue Cross sent to CNS an LOA reflecting the agreed upon rate.   Blue Cross stated in the

22  LOA that it was entering into a contract with CNS for "alternative benefits" for John Doe that were to

23  apply for a period that covered the entire length of John Doe's treatment at CNS.   CNS began billing

24  Blue Cross for John Doe's treatment shortly after he was admitted.   At no time during negotiations

25  with CNS, prior to John Doe's admission, during John Doe's treatment by CNS, or while being billed

26  by CNS for John Doe's treatment did Blue Cross indicate to CNS that anyone other than Blue Cross

27  was responsible for paying for John Doe's treatment or that Blue Cross would not pay for John Doe's

28  treatment.   Therefore, accepting the complaint's allegations as true, Blue Cross' conduct in its course

of dealing with CNS gave rise to an implied agreement to pay for John Doe's treatment by CNS at the rate Blue Cross negotiated for and agreed upon with CNS. There is no dispute that CNS upheld its contractual obligation to provide healthcare services to John Doe, that Blue Cross did not pay for over $100,000 of John Doe's treatment at CNS, and that the unpaid bills for John Doe's treatment resulted in damage to CNS.

CNS has adequately pleaded each element of a claim for breach of implied contract against Blue Cross. Therefore, Blue Cross' motion to dismiss CNS' fourth cause of action is DENIED.

### c.     UCL

Finally, CNS alleges that Blue Cross engages in a practice of negligently misrepresenting itself as the financially responsible party to healthcare providers to induce the providers to render healthcare services. CNS contends that this violates the unlawful and unfair prongs of the UCL and seeks injunctive relief.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the false advertising law (§ 17500 et seq.) ]." Cal. Bus. Prof. Code § 17200. "The UCL's purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002) (citing *Barquis v. Merchants Collection Assn*., 7 Cal.3d 94, 110, 101 (1972)).

"By defining unfair competition to include any 'unlawful ... business act or practice,' the UCL permits violations of other laws to be treated as unfair competition that is independently actionable." *Id.* (citing Cal. Bus. Prof. Code § 17200; *Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180 (1999)). Here, CNS bases its claim under the UCL's unlawful prong on Blue Cross' tortious conduct of negligent misrepresentation. As discussed above, CNS adequately alleges a cause of action against Blue Cross for negligent misrepresentation. Blue Cross also does not deny that the conduct at issue constitutes a business practice or act. Because the UCL permits violations of other laws to be treated as actionable unfair competition, CNS adequately states a cause of action under the UCL's unlawful prong against Blue Cross.

For the competitor actions under unfair prong of the UCL, the California Supreme Court

requires "any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal. 4th 163, 186-87 (1999)." California appellate courts are split as to the test used for consumer actions under the UCL unfair prong. *See*, *Bardin v. Daimlerchrysler Corp*., 136 Cal. App. 4th 1255, 1260-61 (2006) ("There are two lines of appellate opinions addressing the definition of 'unfair' within the meaning of the UCL in consumer actions … We respectfully suggest that our Legislature and Supreme Court clarify the definition of "unfair" in consumer actions under the UCL."). Here, CNS does not claim to be a consumer or a competitor. Dicta by the California Supreme Court arguably indicates that such actions may be limited to consumers and competitors. *See*, *Cel-Tech*., 20 Cal. 4th at 187 ("This case involves an action by a competitor alleging anticompetitive practices. Our discussion and this test are limited to that context. Nothing we say relates to actions by consumers or by competitors alleging other kinds of violations of the unfair competition law[.]" Moreeover, CNS provides no authorities to show that it may maintain an action under the unfair prong as neither a consumer nor a competitor. CNS therefore fails to show that it may bring this action under the unfair prong. *See*, *Almasi v. Equilon Enterprises, LLC*, 2012 WL 3945528, *9 (N.D. Cal. Sept. 10, 2012) ("Plaintiffs have failed to provide any support for their argument that they are able to bring a UCL claim for unfair practices despite not being consumers and not being competitors."). Thus, Blue Cross' motion to dismiss CNS' claim under the unfair prong of the UCL is GRANTED.

**B.      12(b)(1) Lack of Subject Matter Jurisdiction**

Santa Rosa moves this Court to dismiss CNS' claims against it for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

**1.      Legal Standard**

A motion to dismiss for lack of subject-matter jurisdiction determines whether the plaintiff has a right to be in the particular federal court, whereas a motion to dismiss for failure to state a claim is an adjudication as to whether a cognizable legal claim has been stated. *Trustees of Screen Actors Guild–Producers Pension & Health Plans v. NYCA*, Inc., 572 F.3d 771, 775 (9th Cir. 2009) (quoting 5B Wright & Miller, Federal Practice and Procedure § 1350 (3d ed. 2004)). A federal court is a court

13

of limited jurisdiction, and may adjudicate only those cases authorized by the Constitution and by Congress. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Faced with a Rule 12(b)(1) motion, a plaintiff bears the burden of proving the existence of the court's subject matter jurisdiction. *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears. *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968–69 (9th Cir. 1981).

"A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." *Thornhill Pub. Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (citing *Land v. Dollar*, 330 U.S. 731, 735 & n. 4 (1947); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 890–892 (3rd Cir. 1977); *Exchange Nat'l Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1130–1131 (2nd Cir. 1976)). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir. 2004). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*.

"If the challenge to jurisdiction is a facial attack, i.e., the defendant contends that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction, the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made." *Cervantez v. Sullivan*, 719 F.Supp. 899, 903 (E.D. Cal. 1989), *rev'd on other grounds*, 963 F.2d 229 (9th Cir. 1992). "The factual allegations of the complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Id*.

**2.      Analysis**

CNS brings claims for violations of ERISA and federal common law estoppel against Santa Rosa. Santa Rosa argues that allowing CNS to maintain its claims would violate Santa Rosa's sovereign immunity as an Indian tribe.

**i.      ERISA**

14

"In general, in the absence of an expressed exemption for Indians, 'a general statute in terms applying to all persons includes Indians and their property interests.'" *Lumber Indus. Pension Fund v. Warm Springs Forest Products Indus.*, 939 F.2d 683, 685 (9th Cir. 1991) (citing *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113, 1115-16 (9th Cir.1985). "However, a general statute that does not expressly apply to Indians will not apply if: (1) the law touches 'exclusive rights of self-governance in purely intramural matters'; (2) the application of the law to the tribe would 'abrogate rights guaranteed by Indian treaties'; or (3) there is proof 'by legislative history or some other means that Congress intended [the law] not to apply to Indians on their reservations[.]'" *Id.*

"ERISA is a statute of general applicability." *Id.* (citing 29 U.S.C. § 1001). "The self-government exception applies only where the tribe's decision-making power is usurped." *Id.* Permitting CNS to sue Santa Rosa will subject Santa Rosa to possible liability for money damages, but will not usurp the tribe's decision-making power. *Id.* Santa Rosa is free to form and operate a tribal pension plan available to all members of the tribe. In fact, Santa Rosa chose to form and operate a Plan governed by ERISA that expressly provides for civil enforcement in state or federal court. (Doc. 29, pp. 2-4). By failing and refusing to pay a healthcare provider for authorized treatment services rendered to its member, Santa Rosa exposed itself to possible liability for that treatment. *Lumber Indus. Pension Fund*, 939 F.2d at 685. Santa Rosa is not protected from such liability under the self-government exception. *Id.* (citing *Coeur d'Alene*, 751 F.2d at 1116; *Confederated Tribes of Warm Springs Reservation of Oregon v. Kurtz*, 691 F.2d 878, 880 (9th Cir. 1982)).

Because sovereign immunity does not prevent CNS from maintaining its ERISA claim against Santa Rosa, Santa Rosa's motion to dismiss CNS' first cause of action is DENIED.

### ii.        Estoppel

In its second cause of action, CNS alleges that CNS detrimentally relied on statements and representations by Santa's Rosa's authorized agent, Blue Cross, in rendering treatment for John Doe. Santa Rosa argues that CNS may not maintain its action against Santa Rosa on the basis of sovereign immunity, but limits its arguments in its reply to CNS' ERISA claim.

However, as discussed above, the Plan provision at issue was not ambiguous. Moreover, recovery by CNS for John Doe's treatment for injuries sustained in an accident while he was

1    intoxicated is contrary to written plan provisions.  *Renfro*, 686 F.3d at 1054.  Because "a beneficiary

2    cannot obtain recovery on the basis of estoppel 'in the face of contrary, written plan provisions,' and

3    the Plan provision was unambiguous, Santa Rosa's motion to dismiss CNS' second cause of action is

4    GRANTED.  *Id*. (quoting *Davidian*, 859 F.2d at 134).

5                                    **CONCLUSION AND ORDER**

6            For the reasons discussed above, the Court:

7    1.    DISMISSES WITH PREJUDICE Plaintiff Centre for Neuro Skills' second cause of action

8          for federal common law estoppel;

9    2.    DISMISSES WITH LEAVE TO AMEND Plaintiff Centre for Neuro Skills' fifth cause of

10         action for violation of the unfair prong of the UCL;

11   3.    DENIES Defendants Blue Cross of California d/b/a Anthem Blue Cross and Anthem Blue

12         Cross Life and Health Insurance Company's motion to dismiss Plaintiff Centre for Neuro

13         Skills' first cause of action under ERISA, third cause of action for negligent

14         misrepresentation, fourth cause of action for breach of implied contract, and fifth cause of

15         action for violation of the unlawful prong of the UCL; and

16   4.    DENIES Defendants Santa Rosa Rancheria Tachi Palace Hotel & Casino and Santa Rosa

17         Rancheria Tachi Palace Hotel & Casino Tribal Member Health Care Plan's motion to dismiss

18         Plaintiff Centre for Neuro Skills' first cause of action under ERISA.

19           Plaintiff shall have ***one opportunity*** to file and serve an amended complaint in an attempt to

20   cure the deficiencies described herein.  Any such further amended complaint shall be filed and served

21   within 20 days of electronic service of this order.  Defendants no later than 20 days after service of the

22   second amended complaint shall file a response thereto.

23

24

25   IT IS SO ORDERED.

26     Dated:   **October 15, 2013**              **/s/ Lawrence J. O'Neill**
                                            UNITED STATES DISTRICT JUDGE
27

28
                                            16